**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MEDLINE INDUSTRIES, INC.,       )
                                       )
        Plaintiff,              )
                                       )     No. 20 C 4424
        v.                    )
                                       )     Judge Ronald A. Guzmán
DIVERSEY, INC. and WYPETECH, LLC,  )
                                       )
        Defendants.          )

**MEMORANDUM OPINION AND ORDER**

For the reasons explained below, the motion of defendant Diversey, Inc. ("Diversey") to dismiss the First Amended Complaint is granted in large part for lack of personal jurisdiction, and the motion of plaintiff Medline Industries, Inc. ("Medline") for leave to issue jurisdictional discovery is denied.

**BACKGROUND**

Medline, which manufactures and sells medical supplies, brought this action against Diversey and Wypetech, LLC ("Wypetech"), a company that Diversey acquired in July 2020. According to the First Amended Complaint, Medline entered into a requirements contract in 2014 with Wypetech's predecessor, Multi-Pack, LLC ("Multi-Pack"), pursuant to which Multi-Pack supplied Medline with Medline-branded disinfectant wipe products. In April 2019, Wypetech became Multi-Pack's assignee under the requirements contract, and Wypetech took over Multi-Pack's Wisconsin plant that had been manufacturing disinfectant wipes for Medline.

The complaint further alleges as follows. Under the contract, Medline would provide non-binding rolling ninety-day forecasts of its product requirements, and thereafter would submit purchase orders for the products. Wypetech, which the contract stated would be the exclusive

manufacturer of the products, was obligated to manufacture products in accordance with the forecasts and had the discretion to accept the portions of purchase orders that were in excess of the forecasts. The initial term of the contract ran through August 2019, with automatic renewal for one-year terms absent written notice to the contrary. The contract renewed in August 2019, and neither party provided notice of non-renewal this year, so it currently runs through August 2021.

Until this spring, Wypetech filled Medline's purchase orders without issues. Even after the explosion in demand for disinfectant products and wipes that was caused by the COVID-19 crisis, Wypetech worked closely with Medline to keep production at the levels Medline needed. In April 2020, Wypetech fulfilled Medline's order for more than 60,000 cases of wipes, and Medline submitted additional forecasts for the following months at levels approximating that of April.

Things changed in May. Wypetech's delivery of disinfectant wipes began to run far behind Medline's purchase orders. Wypetech representatives told Medline that the shortfall was due to Wypetech's inability to obtain sufficient component materials, and assured Medline that Wypetech was working to secure the materials that would enable it to provide sufficient supply. But after the week of June 22, 2020, Wypetech ceased delivering wipes to Medline altogether, and stopped timely responding to Medline's emails and phone calls.

On July 9, 2020, Wypetech informed Medline in an email that Wypetech had been acquired by Diversey, a competitor of Medline with respect to disinfectant wipes. Wypetech also told Medline that it would not accept new purchase orders, based on the "integration of the Wypetech business into Diversey." (ECF No. 41, 1st Am. Compl. ¶ 45.) In Medline's view, "it quickly became apparent that Diversey had been involved in the slowdown of Wypetech's

supply of [p]roducts to Medline and that Diversey intended to continue to control and direct how Wypetech would dedicate its capacity to fill customer orders in a way that would significantly delay and sharply curtai[l] deliveries to Medline." (*Id.* ¶ 49.)  Later in July, Diversey offered to allow Wypetech to provide Medline with 7,500 cases of wipes per month to fulfill previously-accepted orders, and then increased this number to 10,000, indicating that that was the most it would allow Wypetech to make for Medline.  Diversey asserted that component-supply issues continued, but Medline says that Wypetech's current manufacturing schedule belies that representation.

Medline alleges that Diversey is instructing Wypetech to repudiate the requirements contract, and that this instruction renders Medline unable to fulfill its customers' needs.  Medline states that it is searching for an alternate supplier but has yet to obtain one and is unlikely to be able to do so until sometime in 2021.

Medline asserts a claim against Wypetech for breach of contract and a claim against Diversey for tortious interference with contract and seeks preliminary and permanent injunctive relief as well as compensatory and punitive damages.  Subject-matter jurisdiction is based on diversity of citizenship.  Medline is a corporation incorporated in Illinois with a principal place of business in Illinois.  Diversey is a corporation incorporated in Delaware with a principal place of business in South Carolina.  Wypetech is a limited liability company whose sole member is Diversey; thus, Wypetech is also a citizen of Delaware and South Carolina.  The forum-selection clause of the contract between Medline and Wypetech requires any claim arising under or related to the contract to be brought in state or federal court in Illinois.

Diversey asserts that this Court lacks personal jurisdiction over it and that Medline fails to state a claim against it.  The Court limits its analysis to the personal-jurisdiction issue because

3

it is dispositive.

## DISCUSSION

A complaint need not include facts alleging personal jurisdiction, but once a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff's burden is to establish a prima facie case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). To determine whether plaintiff has done so, the Court reads the complaint "liberally, in its entirety, and with every inference drawn in favor" of plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006).

"District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (citing, *inter alia*, 735 ILCS 5/2-209(c)).

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum state. *Id.* Medline relies only on specific jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; those contacts must be "directly related to the conduct pertaining to the claims asserted." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Specific jurisdiction lies only where the defendant's "'suit-related conduct'" creates a

4

"'substantial connection'" with the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). There are various formulations of the standard for establishing specific personal jurisdiction, but they can be condensed into three essential requirements: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

Courts evaluate specific jurisdiction "by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *see also Felland*, 682 F.3d at 674. Medline's claim against Diversey is for tortious interference with contract. For intentional torts, the purposeful-direction inquiry has three prongs, requiring "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703.

The second prong, "express aiming," is where the dispute lies. The Court considers whether the defendant's suit-related conduct is connected to the forum state in a meaningful way. *Walden*, 571 U.S. at 286-90; *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018). "The connection must be of the defendant's creation, not of the plaintiff's." *Ariel*, 881 F.3d at 522. "It is not enough that a defendant know that any injury resulting from alleged tortious conduct would be felt in the forum state." *Green Light Nat'l, LLC v. Kent*, No. 17 C 6370, 2018 WL 4384298, at *3 (N.D. Ill. Sept. 14, 2018); *see also Ariel*, 881 F.3d at 522

5

("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law.")).

Diversey contends that Medline's personal-jurisdiction allegations are insufficient because they rely nearly entirely on Medline's presence and alleged injury in Illinois to establish minimum contacts. Diversey acknowledges that the complaint refers to some email and telephone communications between Diversey and Medline, but contends that they are too minimal to give rise to personal jurisdiction and do not directly relate to the alleged conduct.

In response, Medline relies on the following contacts.[1] In response to a July 17, 2020 email from Medline in which Medline asked whether Diversey agreed that the contract between Medline and Wypetech was "binding on Diversey," Diversey's general counsel responded that while Diversey had purchased 100 percent of Wypetech's membership interests, the parties to the contract remained Wypetech and Medline. (ECF No. 41-5.) During telephone calls with Medline representatives on July 22 and 23, 2020, Diversey representatives stated what the "ceiling" would be on the number of cases of disinfectant wipes Diversey was allowing Wypetech to make for Medline. (Compl. ¶ 50.) Diversey representatives "indicated" (the complaint does not say how they so communicated, when, to whom, or in what context) that Wypetech would not "promptly satisfy the outstanding backlog in purchase orders." (*Id.* ¶ 67.) Aside from these contacts, Medline also cites some communications between Diversey and Wypetech, or between Wypetech and Medline, such as a statement from Wypetech, in response to Medline's July 9 inquiry about an unspecified "offer bid," that "all Medline/Wypetech

---

[1]     Medline does not rely on its allegations in the amended complaint that Diversey does business in this district, has "scores" of employees in the Chicago area, or invoked or submitted to the court's jurisdiction in two other cases that were pending in the Northern District of Illinois. (Compl. ¶¶ 8-10.) Those factors are not relevant to this specific-jurisdiction analysis, in any event. Medline does point out that Diversey was "founded in Chicago and named for Diversey Avenue," (ECF No. 73, Pl.'s Resp. at 14), but that bit of trivia is also irrelevant.

correspondence" had to go "through" a certain Diversey employee, (ECF No. 41-4). Medline characterizes these communications as interference with Wypetech's "communications with Medline in Illinois," or interference with Wypetech's production and shipment of orders "to Illinois." (ECF No. 73, Pl.'s Resp. at 10-11.) Medline further argues that at all relevant times, Diversey was aware of the "Illinois-based" contract between Medline and Wypetech; caused Wypetech to breach that contract; acted with an intent to deprive Medline of its supply of a critical product at a critical time; and knew that Medline would feel the impact of this injury at its headquarters in Illinois. (*Id.* at 11.)

The Court's inquiry "focuses on whether *the conduct underlying the claim* was purposely directed at the forum state." *Felland*, 682 F.3d at 674 (emphasis added and internal punctuation and citation omitted). Medline's claim against Diversey is based on the allegations that Diversey directed Wypetech to repudiate the requirements contract by instructing Wypetech to dishonor Medline's purchase orders and to delay and limit deliveries to Medline. Those actions were not undertaken in Illinois; neither Diversey nor Wypetech is located in Illinois. Diversey's principal place of business is in South Carolina, and Wypetech's principal place of business is in Wisconsin. (And, as the complaint sets out, Wypetech manufactures Medline-branded wipes in Wisconsin.) Medline offers no evidence to suggest that the conduct underlying its claim against Diversey occurred in Illinois. As for the cited communications between Diversey and Medline, they are sparse and insufficient to create personal jurisdiction. The email from Diversey's general counsel, described above and attached as Exhibit 5 to the complaint, was a response to an emailed question from Medline. Medline fails to provide details or submit evidence regarding the telephone calls or to submit evidence indicating that Diversey initiated the communications. Medline maintains that the communications "furthered Diversey's tortious conduct directed at

7

Illinois," (Pl.'s Resp. at 10), but does not explain this assertion. To establish a claim for tortious interference with contract, the only conduct by a defendant that a plaintiff must prove is the intentional and unjustified inducement of the breach of a valid and enforceable contract between plaintiff and another. *See, e.g.*, *Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2019 WL 4958236, at *3 (N.D. Ill. Oct. 8, 2019). Diversey's communications with Medline did not cause the alleged injury, they were not the means by which Diversey allegedly accomplished the alleged tortious interference, and they did not "further" the alleged inducement of a breach. Contrary to Medline's contention, those communications are not "directly related" to the tortious conduct, *see Brook*, 873 F.3d at 552; they are only tangentially related. *See Monco v. Zoltek Corp.*, No. 17 C 6882, 2019 WL 952138, at *13 (N.D. Ill. Feb. 27, 2019) (rejecting plaintiff's argument that defendant "expressly aimed" its tortious conduct at Illinois, where the actions alleged to underlie the tortious interference occurred in Missouri, and defendant's communications with plaintiff were "simply part of the circumstances explaining [defendant's] alleged motive"). The remaining allegations Medline relies upon to establish jurisdiction are not founded on Diversey's conduct, but on Medline's presence in Illinois, and plaintiff cannot be the only link between the defendant and the forum in order to satisfy the express-aiming prong. *See Walden*, 571 U.S. at 285; *Weisskopf v. Marcus*, 695 F. App'x 977, 978 (7th Cir. 2017) (observing that *Walden* "holds that it does not matter where effects are felt").

Medline fails to plead conduct or submit evidence establishing the required "substantial connection" between Diversey and Illinois.[2] This action therefore will be dismissed as against Diversey for lack of personal jurisdiction. Diversey seeks a with-prejudice dismissal, but that is

---

[2]     Thus, the Court need not go further in the personal-jurisdiction analysis by analyzing the other requirements, such as "fair play and substantial justice." *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014).

not an appropriate disposition. *See, e.g., Peters v. Sloan*, 762 F. App'x 344, 346 (7th Cir. 2019) (dismissals for lack of personal jurisdiction ordinarily are without prejudice). The dismissal will be without prejudice, so that Medline can refile its claim against Diversey where a court would have personal jurisdiction. Given this ruling, the Court does not address Diversey's arguments for dismissal under Rule 12(b)(6). *See Burmaster v. Herman*, 737 F. App'x 790, 791 (7th Cir. 2018).

Medline moves alternatively for leave to issue jurisdictional discovery in the event that its allegations are found insufficient to confer personal jurisdiction. Medline must make a "colorable" showing of personal jurisdiction before discovery is allowed. *See Seo v. H Mart Inc.*, No. 19 C 3248, 2020 WL 5547913, at *4 (N.D. Ill. Sept. 16, 2020); *Bradford Victor-Adams Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 4:18-CV-04167-SLD-JEH, 2019 WL 3604594, at *4 (C.D. Ill. Aug. 6, 2019).[3] Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, *Sullivan v. Sony Music Ent.*, No. 14 C 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014), but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted, *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16 C 5918, 2017 WL 1093150, at *12 (N.D. Ill. Mar. 23, 2017), *aff'd sub nom. John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692 (7th Cir. 2018). Medline has failed to establish a colorable basis for personal jurisdiction over

---

[3]    This Court agrees with the district court in *Bradford Victor-Adams* that since a "prima facie" showing based on the written submissions is sufficient to establish personal jurisdiction, "it seems illogical to apply this standard to a request for discovery," and that the proper standard to apply to requests for jurisdictional discovery is the requirement of a "colorable" showing. 2019 WL 3604594, at *4 n.4.

9

Diversey.[4]   There is no ambiguity here regarding the extent of Diversey's suit-related contacts with Illinois, and Medline has had ample opportunity to submit evidence on that issue. Accordingly, the Court denies Medline's motion for leave to conduct jurisdictional discovery.

## CONCLUSION

The motion of defendant Diversey, Inc. to dismiss the First Amended Complaint [46] is granted in large part.  The First Amended Complaint is dismissed without prejudice as against Diversey, Inc. for lack of personal jurisdiction.  Plaintiff's motion for leave to issue jurisdictional discovery [74] is denied.


**DATE:**  September 28, 2020


**Hon. Ronald A. Guzmán**
**United States District Judge**

---

[4]     Medline states in its motion for leave to issue discovery that Diversey is selling its own wipes to Medline in Illinois "that in the absence of the interference would have been manufactured for Medline by Wypetech," and that this conduct "further closes the loop on Diversey's interference" and "involves conduct connected to the tort that is targeted at Illinois." (ECF No. 74, Pl.'s Mot. Leave Issue Disc. at 3-4.)  The Court is unpersuaded, and agrees with Diversey that the argument "is merely a re-packaging of Medline's claim that it was harmed in Illinois by Diversey's conduct." (ECF No. 81, Def.'s Resp. at 3.)