**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 20 CV 4424 |
| | ) | |
| vs. | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| WYPETECH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendant Wypetech, LLC's motion for a determination that plaintiff Medline Industries, Inc.'s non-renewal notice is not privileged and for an expedited briefing schedule (Dckt. #142). For the reasons stated below, Wypetech's motion is granted.

**I.       Background**

Medline alleges that it and Wypetech are parties to a Requirements Contract ("Contract") that became effective on August 19, 2014. (Dckt. #41 at 7). The Contract had a five-year initial term, which automatically extends in one-year renewal terms absent service of a written notice not to renew or termination in accordance with its provisions. (Dckt. #41 at 7, 10; Dckt. #41-1 at 5). The Contract renewed in August 2019 for a period through August 2020. (Dckt. #41 at 10).

Medline Product Manager Deborah Coligado believed that there "were aspects of the Medline-Wypetech contractual relationship that weren't perfect for Medline." (Dckt. #181 at 3). Through the months of May and June of 2020, Ms. Coligado considered Medline's options with respect to its Wypetech relationship and she had multiple discussions and email exchanges with other Medline personnel on the topic. (Dckt. #181 at 4). On June 10, Ms. Coligado prepared a

1

"draft notice of non-renewal" document ("Notice") regarding the Contract because Medline was considering altering its contractual relationship with Wypetech. (Dckt. #181-1 at 1, 3). The two sentence Notice states that it is Medline's notice of non-renewal under the Contract and that the Contract will expire on August 18, 2020. (Dckt. #141-1). Ms. Coligado drafted the Notice "as part of what [she] understood would be a renegotiation (and not an end) of the contractual relationship between Medline and Wypetech." (Dckt. #180-1 at 3).

After drafting the Notice on June 10, Ms. Coligado sent it to Medline's in-house counsel Daniel Monico seeking legal advice as to whether the Notice would be sufficient to satisfy the Contract's written notice of non-renewal requirement. (Dckt. #180-1 at 3). On June 14, Ms. Coligado exchanged text messages with Wypetech's President Peter Melchior to schedule a call to discuss the status of Wypetech's relationship with Medline. (Dckt. #189-2 at 2-3). Ms. Coligado and Mr. Melchior had a call on June 15 during which Ms. Coligado stated that she had sent (or was going to send)[1] Wypetech a letter indicating that Medline was electing a non-renewal of the Contract and that the last day of the term of the Contract would be August 18, 2020. (Dckt. #142-2 at 28, 30; Dckt. #189-2 at 3).

## II.     The Parties' Arguments

Wypetech asserts that the Notice is not protected by the attorney-client privilege because: (1) it does not reflect legal advice or client confidences; (2) it was disclosed to a third party (Wypetech and Mr. Melchior); and (3) Medline waived any privilege that might have otherwise existed by failing to exercise even minimal diligence to prevent the production of the Notice during the expedited discovery proceedings that occurred in connection with Medline's preliminary injunction motion. Medline asserts that the Notice is privileged because: (1) the

---

[1] The parties – each citing to Ms. Coligado's testimony and emails – dispute whether Ms. Coligado actually sent the Notice to Wypetech.

Notice was a draft document sent to counsel for the purpose of obtaining legal advice; (2) Ms. Coligado never sent the Notice to Wypetech; (3) Ms. Coligado's June 15 conversation with Mr. Melchior did not leave Wypetech with the understanding that Medline had terminated the Contract and oral notice would be insufficient to terminate the Contract in any case; and (4) Medline's production of the Notice during discovery was inadvertent and did not constitute a waiver under Federal Rule of Evidence 502(b).

### III.     Analysis

Medline, as the party asserting the attorney-client privilege over the Notice, has the burden of establishing all essential elements of the privilege.  *See, e.g., United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983).  The attorney-client privilege applies:

> (1) Where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection can be waived.

*Id.*; *United States v. White,* 970 F.2d 328, 334 (7th Cir. 1992); *Sullivan v. Alcatel-Lucent USA, Inc.,* No. 12 C 7528, 2013 WL 2637936, at *2 (N.D.Ill. June 12, 2013) (same, citing Illinois case law).  "While a violation of the attorney-client-privilege is a serious matter, the privilege is in derogation of the search for truth, . . . and th[e] [Seventh] [C]ircuit has repeatedly held that it must be strictly confined."  *White,* 970 F.2d at 334 (internal citations omitted); *Sullivan,* 2013 WL 2637936, at *2 ("courts should construe the privilege within the narrowest possible limits") (internal quotation marks omitted).

### A.     The Notice is not protected by the attorney-client privilege because it does not contain legal advice and was never intended to remain confidential

It is undisputed that the Notice itself does not reflect any legal advice or any request for legal advice on its face.  It is also clear from its very nature and Ms. Coligado's declaration that

the Notice was *not* intended to remain confidential but was instead intended to be used as part of Medline's effort to alter – either through renegotiation or nonrenewal – its contractual relationship with Wypetech.  Documents prepared for a business purpose such as this are not protected by the attorney-client privilege particularly where they do not reflect or request legal advice.  *See, e.g., Miller UK Ltd. v. Caterpillar, Inc.,* 17 F.Supp.3d 711, 730 (N.D.Ill. 2014) (citing cases); *Miller UK Ltd. v. Caterpillar, Inc.,* No 10 C 3770, 2015 WL 13652752, at *2 (N.D.Ill. Feb. 11, 2015); *Dudley v. Ski World, Inc.,* 1989 WL 73208, at *2 (S.D.Ind. Feb. 20, 1989).

     Furthermore, Ms. Coligado told Mr. Melchior about the Notice.  "The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."  *United States v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d Cir. 1990); *United States v. Int'l Bhd. of Teamsters,* 961 F.Supp. 665, 673 (S.D.N.Y.), *aff'd,* 119 F.3d 210 (2d Cir. 1997) (same); *White,* 970 F.2d at 334 (attorney-client privilege did not apply to documents where clients "intended the information contained in the documents to be transmitted to third parties."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 319 F.R.D. 100, 105 (S.D.N.Y. 2017) (the attorney-client privilege is inapplicable to "business-orientated communications" that "obviously were not intended to be kept confidential . . . [and] virtually by definition . . . were meant to be conveyed to third parties"); *United States v. Willis,* 565 F.Supp. 1186, 1207 (S.D.Iowa 1983) ("Documents of a type designed to be disclosed to third parties do not fall within the privilege because they are not deemed to be confidential.").  Consequently, the Notice is not protected by the attorney-client privilege.

B.  **The fact that Ms. Coligado submitted the Notice to Medline's counsel for legal advice does not establish that the Notice is protected by the attorney-client privilege**

Although Ms. Coligado submitted the Notice to Medline's counsel for legal advice regarding whether it satisfied the Contract's written notice requirement, her action in this regard does not establish that the attorney-client privilege applies to the Notice itself. "Not all information transmitted to an attorney becomes cloaked with the attorney-client privilege." *White,* 970 F.2d at 334. Where a party submits a non-privileged business document to an attorney, the document does not become privileged even though the attorney's legal advice regarding the document may be protected. *See, e.g., Miller,* 2015 WL 13652752, at *1-2; *Madoff,* 319 F.R.D. at 105; *Stafford Trading, Inc. v. Lovely,* No. 05-C-4868, 2007 WL 611252, at *3 (N.D.Ill. Feb. 22, 2007); *Hurt v. Philadelphia Hous. Auth.,* No. CIV. A. 91-4746, 1994 WL 263714, at *1-2 (E.D.Pa. June 8, 1994). Thus, while whatever legal advice Mr. Monico gave Ms. Coligado regarding the legal efficacy of the Notice is privileged, the Notice itself is not.

C.  **Even if the Notice was protected by the attorney-client privilege when it was drafted, Ms. Coligado waived the privilege when she disclosed the contents of the Notice to Mr. Melchior**

It is undisputed that Ms. Coligado told Mr. Melchior about the existence of the Notice during their June 15, 2020 call and she – at a minimum – told him that she was going to send the Notice to Wypetech. Wypetech asserts that Ms. Coligado waived any attorney-client privilege otherwise enjoyed by the Notice during the June 15 call. The Court agrees. Whether a party has waived the attorney-client privilege is a question of fact, *see Teamsters,* 961 F.Supp. at 673, and courts have found that parties have waived their privilege by disclosing the content of a privileged communication during a telephone call. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 23 (1st Cir. 2003) ("The privilege

5

evaporates the moment that confidentiality ceases to exist" and "[i]t is crystal clear that any previously privileged information actually revealed during the call lost any veneer of privilege"); *Doe v. Phillips Exeter Acad.,* No. 16-CV-396-JL, 2016 WL 5947263, at *4-5 (D.N.H. Oct. 13, 2016) (waiver by disclosure of privileged information to third parties during a call); *Constand v. Cosby,* 232 F.R.D. 494, 503 (E.D.Pa. 2006) (attorney-client privilege can be waived through discussions with a third party).

Thus, regardless of whether Ms. Coligado actually sent the Notice to Wypetech, she waived any arguable attorney-client privilege by voluntarily disclosing the "gist" of the Notice to Mr. Melchior during their call. *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C. 1984); *Prebilt Corp. v. Preway, Inc.,* No. CIV.A. 87-7132, 1988 WL 99713, at *3-4 (E.D.Pa. Sept. 23, 1988) (same).[2] Finally, given Ms. Coligado's deliberate decision to disclose the content of the Notice to Mr. Melchior, this Court rejects Medline's argument that it is entitled pursuant to Federal Rule of Evidence 502(b) to claw back the copies of the Notice that it produced to Wypetech during discovery.

---

[2] Medline asserts that any oral notice of non-renewal that Ms. Coligado gave during the June 15 call was insufficient to satisfy the notice requirements of the Contract. *See* Dckt. #180 at 5 (citing cases). Even if Medline were correct about this point of law (and the Court makes no finding on this issue at this time), that has nothing to do with whether Ms. Coligado waived any attorney-client privilege that might have otherwise protected the Notice by disclosing the contents of the Notice to Wypetech during the call. Under the caselaw cited above, Ms. Coligado's statements effectuated a waiver even if oral notice were insufficient to satisfy the Contract's notice requirement.

## CONCLUSION

For the reasons stated above, Wypetech's motion for a determination that plaintiff's non-renewal notice is not privileged and for an expedited briefing schedule (Dckt. #142), is granted.

**ENTERED:** November 12, 2020

_____
Jeffrey I. Cummings
United States Magistrate Judge